

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RAY COLLINS, JR., | \* | CIV 02-4234 |
| | \* | CR 99-40127 |
| Movant, | \* | |
| | \* | |
| -vs- | \* | MEMORANDUM OPINION |
| | \* | AND ORDER |
| UNITED STATES OF AMERICA, | \* | |
| | \* | |
| Respondent. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ray Collins, Jr. ("Collins") has filed a 28 U.S.C. § 2255 motion to vacate his sentence. In this motion, Collins sets forth nine claims:

1. Use of perjured testimony.
2. Failure to give jury instruction on accomplice testimony.
3. Failure to swear in the jury.
4. Insufficient indictment.
5. Inaccurate jury instruction on intent.
6. The Court's sentences were incorrect.
7. Insufficient evidence of identity of the controlled substance.
8. Cumulative trial errors denied due process and a fair trial.
9. Ineffective assistance of trial and appellate counsel.

The respondent filed an answer to the motion, a brief in support of the answer, an affidavit of Barry L. Vlasman, Collins' court-appointed trial attorney, and an affidavit of Thomas H. Frieberg, his appellate lawyer. For the reasons discussed below, the motion to vacate will be denied.

## BACKGROUND

Collins was indicted for conspiracy to possess with intent to distribute a controlled substance (Count 1), possession with intent to distribute (Count 2), and aiding and abetting possession with

intent to distribute (Count 3). Mr. Barry Vlasman was appointed counsel for Collins. At trial, nineteen witnesses testified for the government and seven witnesses testified for Collins. Collins was convicted on Counts 1 and 3, and he was acquitted on Count 2. On June 29, 2000, Collins was sentenced to concurrent terms of imprisonment of 360 and 60 months. Collins appealed and the Eighth Circuit affirmed the judgment and sentence in an unpublished per curiam opinion on June 22, 2001. *See United States v. Collins*, 2001 WL 699867 (8th Cir. 2001) (per curiam). On May 28, 2002, the United States Supreme Court denied Collins' petition for certiorari. *See Collins v. United States*, 535 U.S. 1099 (2002). Collins filed the first version of the present § 2255 motion on November 1, 2002. The government filed an answer and moved to dismiss the motion on January 3, 2003.

On July 30, 2004, after the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), Collins moved to amend his § 2255.[1] In addition to the nine grounds for relief asserted in his original motion, Collins contended that his sentence violates the Sixth Amendment because it is based on factors that were not found by a jury. Subsequently, the Supreme Court granted certiorari in *United States v. Booker*, 543 U.S. 220 (2005), to decide whether the federal sentencing guideline scheme was constitutional. Collins' motion to amend was granted and his § 2255 motion was held in abeyance pending the Supreme Court's decision in *Booker*. In *Booker*, the Court held first that the Sixth Amendment right to a jury trial, as construed in *Blakely*, attaches to findings that enhance a defendant's sentence under the federal sentencing guidelines. *See Booker*, 543 U.S. at 230-244. In a separate majority opinion, the Court invalidated the provisions of the Sentencing Reform Act that make the federal guidelines mandatory. The Court concluded that the Act, so modified, "makes the Guidelines effectively advisory." *Id.* at 244-267. After *Booker*, a sentencing court is required "to consider Guidelines ranges" but is permitted "to tailor the sentence

---

[1] In *Blakely*, the Supreme Court ruled that a Washington state sentencing guideline scheme violated the defendant's Sixth Amendment right to trial by jury by permitting his sentence to be enhanced above the guideline range based on factors not found by a jury beyond a reasonable doubt, even though the resulting sentence was less than the statutory maximum. *See Blakely*, 542 U.S. at 303-304.

2

in light of other statutory concerns as well. . . ." *Id.* at 245-246 (citing 18 U.S.C. § 3553(a)). In addition, the standard of appellate review is no longer *de novo* but reasonableness.

Pursuant to this Court's Order, the government responded to Collins' amended § 2255 after *Booker* was decided. The government argued that *Booker* is not to be applied retroactively to Collins' § 2255 action. Collins submitted a "rebuttal" in which he argued in favor of applying *Booker* retroactively to cases on collateral review. Subsequently, the Eighth Circuit ruled that *Booker* "does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit movants in collateral proceedings." *Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir. 2005). Thus, Collins may not invoke *Booker* retroactively to invalidate his sentence, and he is not entitled to relief on the claim asserted in his amended petition. The Court will address the claims Collins raised in his original § 2255 motion.

## DISCUSSION

A prisoner in custody pursuant to a federal conviction and sentence may move the court that imposed the sentence to vacate, set aside or correct the sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The right of collateral review is an extraordinary remedy and "will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Therefore, § 2255 actions are limited by the preclusive effect of decisions resulting from prior direct appellate review and by the doctrine of procedural default. Claims which have been raised and decided on direct appeal are precluded from further litigation under § 2255. *See Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). On the other hand, under the doctrine of procedural default, issues that could have been, but were not, raised on direct appeal are waived and cannot be asserted for the first time in a collateral § 2255 action absent a showing of cause and actual prejudice, or a showing of actual innocence. *See United States v. Bailey*, 235 F.3d 1069, 1071 (8th Cir. 2000). Moreover, even where an error occurred, a conviction will not be overturned if that error is deemed to have been

harmless. *See United States v. Barnhart*, 979 F.2d 647, 652 (8th Cir.1992). Errors that are non-jurisdictional or non-constitutional cannot be raised now by Collins after he failed to raise them in a direct appeal, even if Collins could demonstrate cause and prejudice. *See Anderson v. United States*, 25 F.3d 704, 705 (8th Cir. 1994). The Court finds that Collins has failed to establish cause and prejudice, and that he has failed to establish factual innocence. Thus, Collins procedurally defaulted all of his claims other than those for ineffective assistance of counsel.[2] Nonetheless, the government addressed all of the claims on the merits, and the Court will do so.

1.   Perjured Testimony

Collins argues that the government knowingly used perjured testimony of Cynthia Smith and Duane Adams. Smith testified that Collins provided her with a package of crack cocaine and placed her on an airplane in Los Angeles on May 19, 1998. She was told Adams would meet her at the Sioux Falls airport. Smith was met at the airport by Adams and another member of the drug conspiracy, Joseph Andrews. Also present was Andrews' girlfriend, Heidi Holcom. Holcom testified that she had overheard Adams and Andrews talking on the phone with Collins to arrange the delivery of the drugs by Smith. She testified that the trip had been planned for at least "a couple of weeks." Phone records established the calls between the residence where Collins lived and the residences where Andrews and Adams lived. Adams, Smith and Holcom all testified that after Smith was picked up at the airport, she was taken to a residence on South Walts in Sioux Falls where another girlfriend of Andrews' and Andrews' uncle, Larry Williams, lived. Smith arrived in Sioux Falls around midnight and was taken to the Walts residence during the early morning hours of May 20. At the residence, Smith delivered the drug package to Adams. Adams called Collins and confirmed that he had received the package of drugs from Smith. Andrews and Adams then split the contents of the package, which Adams testified contained 29 ounces of crack cocaine.

---

[2]Ineffective assistance of counsel claims should be brought in 28 U.S.C. § 2255 proceedings rather than on direct appeal because they usually involve facts outside the record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003).

Collins' perjury argument is based primarily on the testimony of Smith and Adams regarding the call to Collins. On cross-examination, Adams testified that he used Larry Williams' phone to call Collins from the Walts address. He did not remember if the phone had a cord or not, but he said it was not a cell phone. Agent Steve Hummel testified at trial that he did not believe there was a residential phone service at the Walts address when a search warrant was executed on May 21, 1998. A cell phone was seized but Hummel was unable to obtain any records for it. Collins contends that because there was no phone service at the Walts address on May 20, the testimony of Smith and Adams regarding the call to Collins was false.

"The law is quite clear that 'in order to vacate the judgment and sentence on such grounds, two elements must be established: first, the use of perjured testimony, and second, knowledge by the prosecuting officials at the time the testimony was used that it was perjured.'" *United States v. Conzemius*, 611 F.2d 695, 697 (8th Cir. 1979), citing *Holt v. United States*, 303 F.2d 791, 794 (8th Cir. 1962). Collins has not established either that the testimony about the call to Collins was false, or that the government's attorney or any member of the prosecution team knew at the time of trial that Smith and Adams were lying about the call. Assuming for purposes of argument that Smith and Adams lied about the call to Collins, there is nothing to indicate that the government knowingly used perjured testimony.

Collins further contends that Adams testified falsely that he never brought drugs back to Sioux Falls. Adams testified that Collins generally sent different people to Sioux Falls with drug shipments for Adams to sell, but Adams did not bring the drugs back to Sioux Falls. (Trial Transcript at 201.) It is clear that this testimony, where Adams denied bringing crack cocaine from California to Sioux Falls, related to his dealings with Collins. In support of his argument that this was false testimony, Collins references a portion of Adams' debriefing interview where Adams talked about dealings with an individual by the name of Bernard Griffin. (A copy of the debriefing report is attached to Collins' § 2255 motion as exhibit 3.) In the interview, Adams admitted purchasing cocaine from Griffin in Compton, California, cooking the powder cocaine into rock cocaine, and taking it to Sioux Falls to sell. Adams said that he dealt with Griffin "to make a little

extra money, in addition to the crack cocaine Adams was assisting Collins in distributing." Adams' dealings with Griffin were not even addressed during Collins' trial. The fact that Adams brought drugs to Sioux Falls for Bernard Griffin does not render false his testimony that he did not bring drugs to Sioux Falls for Collins.

Collins also complains that the government allowed Adams to falsely testify that he had only one prior felony conviction when, in fact, he had more than one. Adams was asked by the prosecutor at trial if he had any prior "adult" convictions, and he responded that he had one prior drug felony. That testimony was not false. The other felony convictions occurred when Adams was a juvenile. Collins recognizes this but argues that the prosecutor asked only about adult convictions in an attempt to conceal the prior juvenile robbery, rape and kidnapping convictions. There is no indication that the prosecutor was trying to conceal the prior convictions. Mr. Vlasman acknowledged in his affidavit that he knew about Adams' prior juvenile felony convictions, but chose not to use them for impeachment purposes. The reason for that will be discussed when the Court addresses Collins' ineffective assistance of counsel claims.

2.  Accomplice Jury Instruction

Collins asserts that the Court failed to "give the customary accomplice instruction" to the jury. It is not clear to the Court what instruction Collins believes the jury should have been given. The Eighth Circuit pattern instruction is:

> **4.05 TESTIMONY OF ACCOMPLICE**
>
> You have heard testimony from (name of witness) who stated that [he] [she] participated in the crime charged against the defendant. [His] [Her] testimony was received in evidence and may be considered by you. You may give [his] [her] testimony such weight as you think it deserves. Whether or not [his] [her] testimony may have been influenced by [his] [her] desire to please the Government or to strike a good bargain with the Government about [his] [her] own situation is for you to determine.

Eighth Circuit Manual of Model Jury Instructions Criminal, § 4.05 (2003). This pattern instruction, including the names of Collins' accomplices, was given to the jury as the Court's Instruction No. 12. (Doc. 143.) As the government points out, this Court instructed the jury carefully and extensively on how they should consider the testimony of each of the cooperating witnesses. In addition to Instruction No. 12, the Court's instructions indicated how the jurors should consider testimony of witnesses who had plea bargains and were cooperating with the government, those who had immunity, those who had criminal convictions, those who had pleaded guilty to a crime which arose out of the same events for which Collins was on trial, and those who were informers. (Doc. 143, Instructions 9, 10, 11, 13 and 14.) There was no error in the Court's instructions regarding the credibility of witnesses.

3. <u>Swearing the Jury</u>

Collins submitted an affidavit in which he attests that he has no recollection of the jury being sworn, and he indicated that the trial transcript did not state the jury was sworn prior to hearing testimony. The trial transcript on file does not contain verbatim jury selection, opening statements or preliminary instructions. Instead, it states in a parenthetical that, "jury selection was conducted, opening statements were given, and preliminary instructions were read by the Court." This is common practice among court reporters. The Clerk's minutes for the trial proceeding reflect that the jury was "given the oath to try the case." However, to allay Collins' concern that the jury was not sworn, the Court directed the court reporter to transcribe the portion of the trial where the jury was sworn. That portion of the transcript is now filed with the Clerk. (Doc. 211.) Collins is not entitled to relief on this ground.

4. <u>Sufficiency of Indictment</u>

Collins contends that the indictment fails to recite an essential element of the offense charged because it refers only to cocaine base rather than to cocaine. His argument is based on 21 U.S.C. § 841(b)(1)(a), which provides in relevant part:

> (1)(a) In the case of a violation of subsection (a) of this section involving - -

7

> . . . (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base . . . .

The substances described in clause (ii) are: coca leaves, cocaine, its salts, optical and geometric isomer, or salts or isomers. Collins believes that one of the substances listed in clause (ii) should have been named in the indictment. He has no authority for that proposition, and the Court is aware of none. The Court finds that the elements of the offenses under 21 U.S.C. §§ 841(a)(1) and 846 are set forth in the indictment in this case. *See, e.g., United States v. Holloway*, 128 F.3d 1254, 1257 (8th Cir. 1997) (setting forth the elements).

5.   Intent Instruction

Collins asserts that jury instruction 19 was improper because it had the effect of shifting the burden of proof from the government to him. Instruction 19 provides:

> Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendant and all the facts and circumstances in evidence which may aid in a determination of defendant's knowledge or intent.
> You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

This instruction was taken from the Eighth Circuit Manual of Model Jury Instructions Criminal, § 7.05 (1996). Instructions with similar language have been repeatedly approved by the Eighth Circuit, *see United States v. Lawson*, 483 F.2d 535, 536 (8th Cir. 1973), and it did not shift the burden of proof to Collins.

6.   360 Month Sentence

The transcript of Collins' sentencing hearing indicates that this Court stated Collins should be imprisoned for "a term of 300 months on count 1 in terms of 60 months on count 3 to be served concurrently for a total term of 360 months." (Sentencing Transcript at 25.) The judgment reflects that Collins was sentenced to 360 months on count 1, to be served concurrently with the 60 month sentence on count 3. Collins argues that the judgment should reflect a 300 month sentence on count 1. Collins bases this argument on cases holding that when an oral sentence conflicts with the

written sentence, the oral sentence controls. Collins' reliance on these cases is misplaced. There is not a conflict between the oral sentence and the written sentence. There is, at most, an ambiguity within the confines of the oral pronouncement of sentence. The Court misstated the term of imprisonment on count 1 as 300 months. But an examination of the entire record leaves no doubt that the Court intended to impose a sentence of 360 months on count 1. *Cf. United States v. Osborne*, 345 F.3d 281, 283 n. 1 (4th Cir. 2003) (The Court considered the sentencing transcript and the written judgment, concluding that the district court intended the 188-month sentence in the written criminal judgment rather than the 180 months that the district court pronounced orally at the sentencing hearing.)

First, the presentence report contained a guideline range for imprisonment of 360 months to life on count 1. In addition, during the sentencing hearing, this Court found a base offense level of 38 and applied a three-level increase for Collins' role in the offense under USSG § 3B1.1(b). (Sentencing Transcript at 14-19.) Collins' criminal history category was reduced from category III to II. (*Id.* at 21.) This resulted in an offense level of 41 with a criminal history category of II. As this Court noted, that set a guideline range of 360 months to life. (*Id.*) No basis for a downward departure existed. (*Id.* at 28.) While advocating for a sentence at the lowest end of the guideline range, Collins' lawyer even stated it would still be a 30 year sentence. (*Id.* at 22-23.) A 300 month sentence on count 1 was not a consideration. Such a sentence would have fallen below the minimum guideline range of 360 months, and this Court intended to follow the sentencing guidelines. This intent was clear when the Court said during the hearing that there was no basis for a downward departure other than from criminal history category III to II, and when the Court stated that Collins' total term of imprisonment would be 360 months. (*Id.* at 25). The written judgment filed on June 30, 2001 also evidences the Court's intent to impose 360 months imprisonment on count 1. Collins' request for a 300-month sentence on count 1 is denied.

7.  <u>Evidence of Crack</u>

Collins' argument that the government failed to prove beyond a reasonable doubt that the substance involved in the offense was crack cocaine lacks merit and can be disposed of summarily.

Individuals involved in the drug trade with Collins testified at trial about seeing or using the crack. In addition, the forensic chemist who analyzed the controlled substances involved in the conspiracy found that they contained cocaine base and testified that the substances were chunk or rock-like in structure, consistent with crack cocaine. (Trial Transcript at 288.) There was never any doubt during the trial or during the sentencing that the substance involved in Collins' offenses was crack cocaine.

8.   Cumulative Errors

Collins incorrectly contends that the cumulative impact of the alleged "errors" discussed above resulted in a fundamentally unfair trial. Collins' claims lack merit, and he was not denied a fair trial.

9.   Ineffective Assistance of Counsel

A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Judicial review of trial counsel's effectiveness is highly deferential, and this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002).

Collins claims that he was prejudiced by the ineffective assistance of his trial attorney, Barry L. Vlasman, alleging that Vlasman failed to: 1) impeach witnesses Cynthia Smith and Duane Adams; 2) request a cautionary instruction on accomplice testimony; 3) object to the Court's failure to swear in the jury; 4) challenge the sufficiency of the indictment prior to trial; 5) object to the Court's intent instruction; 6) ensure that Collins' sentence on Count I was 300 rather than 360 months. Other than the first allegation, these are the same allegations raised by Collins as errors that occurred at trial, and the Court has already explained why the arguments lack merit. For those same reasons, even if Collins could prove that Vlasman performed deficiently, there has been no showing that counsel's failures prejudiced Collins.

The Court will address Collins' first ineffective assistance of counsel claim, that is, that Vlasman should have impeached Adams about his alleged phone call to Collins confirming that the drugs had arrived in Sioux Falls with Cynthia Smith, and his claim that Vlasman should have impeached Adams with his prior convictions. Collins bears a heavy burden to overcome the strong presumption that trial counsel acted competently. *Strickland*, 466 U.S. at 689. The reasonableness of counsel's performance must be evaluated by considering the circumstances faced by the attorney at the time in question, without the benefit of hindsight. *Sanders v. Trickey*, 875 F.2d 205, 207 (8th Cir. 1988). Vlasman explained in his affidavit that he cross-examined Smith and Adams about their inability to remember what type of phone Adams allegedly used to make the call to Collins, and that he pointed out the lack of corroborating records of that telephone call during the cross-examination of DEA agent Steve Hummel. Smith and Adams admitted on cross-examination that they did not know what type of phone Adams used for the call. And Hummel, the lead investigating officer, admitted on cross-examination that there were no telephone records corroborating the phone call. Regarding Adams' prior juvenile convictions, Vlasman attested that he thought it was more important to suppress Adams' prior drug conviction in Sioux City, Iowa, which involved distribution of drugs for Collins, than it was to impeach Adams with his prior juvenile conviction. Vlasman did not believe he could get the Court to prohibit evidence of one conviction, the drug conviction, but allow evidence of the other juvenile conviction. The Court does not agree with defense counsel's tactical decision to not try to use the serious juvenile convictions of Adams. That tactical disagreement, however, is not the test. The Court cannot say that Vlasman's representation of Collins as a whole fell below an objective standard of reasonableness. Even if Collins had met that burden, it has not been shown that the result of the proceedings would have been different. Even if Adams' juvenile record had been introduced, the result would have been no different. As the Eighth Circuit stated on appeal, "There was overwhelming evidence at trial that Mr. Collins was involved in a conspiracy that dealt crack cocaine in kilogram quantities." Collins, 2001 WL at * 1.

Collins also claims that his appellate counsel, Thomas H. Frieberg, was ineffective by failing to challenge the 360-month sentence on count 1. This claim is moot based on the Court's above holding that the record clearly supports the intent to impose a 360-month sentence on Count 1. Thus,

Frieberg's failure to raise that issue on appeal was not objectively unreasonable, and it did not prejudice Collins.

Collins' final claim is that Frieberg rendered ineffective assistance when he did not raise on appeal the issues raised by Collins in this § 2255 petition. "Counsel is not required to raise every colorable claim on appeal." *Armstrong v. Gammon*, 195 F.3d 441, 444 (8th Cir. 1999). "Unless there is evidence to the contrary, we assume that counsel's decision not to raise a claim was a strategic decision to emphasize stronger claims at the expense of weak ones." *Id.* Frieberg's affidavit shows that he discussed with Collins the issues to raise on appeal, and he interviewed attorney Vlasman to determine what issues might lead to a new trial for Collins. Frieberg attests that the evidence that served as the grounds for Collins' conviction "was substantial and overwhelming." On appeal, Frieberg chose to focus on the possibility of an *Apprendi* violation. Success on that claim would have resulted in a lower sentence for Collins. Collins does not refute that Frieberg's decision was a strategic one to emphasize his strongest claim. Even if counsel should have raised other issues on appeal, Collins cannot show prejudice under *Strickland* because the evidence was sufficient to convict him on counts 1 and 3, and he cannot show that, but for his counsel's error in not raising an issue on appeal, there was a reasonable probability that the result of the appeal would have been different. *See Armstrong*, 195 F.3d at 444.

10. <u>Evidentiary Hearing</u>

The "motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." For this reason, Collins' request for an evidentiary hearing is denied. *See* 28 U.S.C. § 2255.

11. <u>Certificate of Appealability</u>

When the district court has denied a motion under 28 U.S.C. § 2255, the petitioner may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Collins has not made a substantial showing that there was an error at trial. Reasonable jurists could find the ineffective representation claim to be debatable. If so, however, the finding that the result of the trial would have been no different is not a finding that reasonable jurists would find debatable or wrong. Accordingly,

IT IS ORDERED:

1. That Petitioner's request for an evidentiary hearing is denied.

2. That all other pending motions are denied.

2. That the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, Doc. 1, is denied; and

3. That a Certificate of Appealability shall not issue on any of the issues raised in the § 2255 motion.

Dated this 31st day of March, 2006.

BY THE COURT:

_(signature)_
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _(signature)_
(SEAL)     DEPUTY